```
                                         UNITED STATES DISTRICT COURT
                                         SOUTHERN DISTRICT OF FLORIDA

                                         CASE NO. 08-21951-CIV-ALTONAGA
                                         MAGISTRATE JUDGE P. A. WHITE
PERMON THOMAS,              :

     Plaintiff,             :

v.                          :            REPORT OF
                                         MAGISTRATE JUDGE
WARDEN HARRIS, et al.,      :

     Defendants.            :
_____
```

## I   INTRODUCTION

In this pro se civil rights action pursuant to 42 U.S.C. §1983, after the entry of prior Reports (DE#s 15, 21) and Orders thereon (DE#s 16, 35), the amended complaint (DE#19) remains pending on plaintiff Thomas' claim that defendant Julio Poveda, M.D., was indifferent to his serious medical needs at Dade C.I., based on events alleged to have occurred between November 2006 and January of 2008. All other claims and defendants were previously dismissed.

**This Cause is before the Court upon defendant Poveda's Motion for Summary Judgment (DE# 59)**, with Exhibits: Exhibit 1, Plaintiff's 1/22/09 Deposition transcript (DE#59-2); Exhibit 2, Poveda's Affidavit; and Exhibit 3, a copy of a Contract between the Florida DOC and MHM Solutions, Inc., the corporate engaged to provide health care services at Florida DOC institutions in DOC Region IV, where Dade CI is located. The plaintiff was advised of his right to respond (see DE#60, Order of Instructions).[1] In opposition to

---

[1]   Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving

Poveda's motion, the plaintiff the plaintiff has filed a Response (DE#67, at pp.2-25) with numerous exhibits, marked A-V (at DE#67 at pp. 26-53, and DE#67-1 at pp. 1-47); his own Affidavit (DE#68); and a Statement of Facts (DE#69). The defendant Poveda filed no Reply.

## II  DISCUSSION

### A.  Plaintiff's Allegations

As noted in a prior Report, plaintiff Thomas alleges that Dr. Poveda was deliberately indifferent to his serious medical needs by failing to provide proper medical treatment for conditions he developed after a 1989 knee injury, and by failing to provide treatment recommended by an orthopedic specialist. The record shows that prior to his arrival at Dade CI he had had two arthroscopic surgeries on his right knee. Thomas alleged that the aforementioned injury which resulted in bone, cartilage and tissue damage, evolved into arthritis, constant swelling and great pain. He alleged that

---

party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990).If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., supra).

Upon the filing of defendant's motion for summary judgment (DE#59), an Order of Instruction (DE# 60) was entered pursuant to Brown v. Shinbaum, 828 F.2d 707 (11 Cir. 1987), to inform plaintiff Thomas of his right, as a pro se litigant, to respond to the defendant's summary judgment motion. The Order also instructed plaintiff about requirements under Fed.R.Civ.P. 56 for a proper response to such a motion.

2

on November 7, 2006 he saw Dr. Poveda and explained the history of his injury and informed him that he was told he needed treatment and care to prevent chondromalacia or osteochondritis. He told Poveda that he was suffering severe swelling, diminished ability to walk, and considerable pain, and that his condition was aggravated by having to climb up and down from a top bunk. According to the plaintiff, Poveda ordered an x-ray but provided no other treatment, such as pain medication, a lower bunk pass or knee brace. Thomas' knee was x-rayed on November 12, 2006, but he was not informed of the results until March 18, 2007 when he went to sick call. At that time, he was told that the x-ray had revealed nothing abnormal, and no treatment was provided. He does not state that he saw Poveda on that occasion. Subsequently, the plaintiff's condition worsened and he experienced unbearable pain. On August 10, 2007, he again went to sick call, and a nurse reluctantly referred him to see a doctor. Thereafter, plaintiff saw Poveda on November 20, 2007 and Poveda determined that he had arthritis and provided a knee brace and a short course of pain medication. Poveda refused to issue a low bunk pass. Plaintiff then was examined by an orthopedist who found that he had significant problems and prescribed a no-prolong standing or walking pass; a low-bunk pass; a restricted activity pass; a walking cane; and pain and anti-inflammatory medication. According to the plaintiff, Poveda nevertheless rejected all of these recommendations, and on January 3, 2008, another prison doctor followed the orthopedist's recommendations.

### B.  Poveda's Motion for Summary Judgment and Defenses

In his motion, the defendant Poveda argues that he is entitled to summary disposition of the case in his favor on various grounds. Poveda contends that plaintiff Thomas' complaint fails to state a claim under §1983 and the Eighth Amendment. In support of this contention Poveda argues that the plaintiff has not demonstrated either that he (Poveda) was deliberately indifferent, or that he (Thomas) suffered from a serious medical need. (Poveda cites to Turner v. Goord, 376 F.Supp.2d 321 (W.E.N.Y. 2005) for its holding that an assertion of pain sensation, alone, unaccompanied by any large medical complications, does not amount to a serious medical need under the Eighth Amendment). Defendant Poveda further argues that he is entitled to qualified immunity, claiming that he was

3

acting within his discretionary authority as a state actor, and was acting in good faith at all times material to the complaint.

Relying on Thoms' statements/admissions at deposition, Poveda argues in his motion that Thomas had underlying pre-existing medical conditions affecting his right knee when transferred to Dade CI. In 1989 he had suffered a chipped bone, torn cartilage, and muscle damage while wrestling, and his injuries had required surgery. As a result Thomas developed chronic right knee pain. After surgery, he was advised by his physicians that his symptoms of pain and swelling would become worse over time. His condition deteriorated during the 17 years prior to his transfer to Dade CI. In 1997 he was diagnosed with osteochondritis and complained of swelling and pain. In 2003, at DeSoto CI, he complained of bilateral knee pain and swelling of his right knee. In 2005-06, while at Charlotte CI, he complained of right knee swelling and pain.

Poveda, in his own affidavit, states that after Thomas was transferred to Dade CI in October 2006, he was examined for complaints of right knee pain; that he was diagnosed as having degenerative joint disease, and that "a plan of care was developed and implemented to treat plaintiff's chronic right knee pain." Poveda specifically states in his affidavit that the "plan of care" included: 1) diagnostic studies including x-rays of the right knee one month after plaintiff's transfer to Dade CI, and an MRI of his right knee; 2) medication for pain relief, including Motrin, Ibuprofen, Naproxen, analgesic balm and Cortizone injections; 3) assistive devices to aide the plaintiff with ambulation including a cane, knee support, knee brace and work boots; 4) special privileges to reduce further aggravation of his condition, including a low bunk pass and a no prolonged walking and standing pass; and 5) consultations with an orthopedist. Poveda, in his May 5, 2009 affidavit also states that plaintiff's "current plan of care per orthopedic specialist recommendations is to continue with Cortizone injections for pain," and that the orthopedist had not recommended that plaintiff undergo surgery to his right knee. Finally, Poveda states in his Affidavit that he promptly attended to Thomas when he saw him at the prison clinic, that he timely and frequently requested specialty evaluations which resulted in evaluation and

treatment of plaintiff by an orthopedist, and that at no time did he refuse to give Thomas treatment or deprive him of it.

Poveda's motion is devoid of supporting medical documentation. Poveda submitted no medical records as exhibits, and relies instead on his own affidavit (DE#59-3), and statements/admissions made by plaintiff Thomas at deposition (Depo., DE#59-2).

### C.  **Plaintiff's Sworn Response, Affidavit, and Exhibits**

In addition to his Affidavit (DE#68), plaintiff Thomas relies on his Response (DE#67) which is itself a sworn document (see Id., at p.24). He has also filed medical records and a copy of his deposition transcript.

Thomas asserts that pain medication was denied, or withheld; and essentially complains that performance of diagnostic tests was delayed, as was provision of certain assistive devices/appliances, and the granting of certain privileges/passes.

Thomas in his affidavit states his opinion that if Dr. Poveda reviewed his medical records and refreshed his recollection based on those documents, then Poveda must have made false statements in his affidavit.

In support of his argument that Poveda was deliberately indifferent to his medical needs, Thomas argues in pertinent part that he saw Poveda [in November 2006] soon after his arrival [in October 2006] at Dade CI, and Poveda did not develop a plan of care as stated in Poveda's affidavit, and "refused to provide plaintiff with the low-bunk pass, pain medication, knee brace, and orthopedic specialist requested by plaintiff." Thomas swears in his Response that on November 7, 2006, when he had requested those things, Poveda said "I'm not going to be giving inmates stuff that they don't need, because inmates be in here asking for things they don't need. Let's wait and see what the x-ray says." (Response, DE#67, pp. 6-7). Thomas states in his sworn Response that on November 7, 2006, when Poveda examined him, he recognized that his knee was swollen and was making a "cracking" when he felt Thomas' knee as he bent it while conducting the examination. (Response, DE#67, p.15).

5

In his Affidavit (DE#68) Thomas claims that Poveda told him "the swelling don't mean there's nothing [sic] seriously wrong."

It is noted that, apart from a brief 9/26/07 incidental note by an LPN entered on plaintiff's Chronological Record of Health Care ("Labs Drawn CBC, UA, FOBT"),[2] indicating that Thomas' blood, urine, and stool samples were taken for analysis (see DE#67, p.38), there are no records to indicate that Thomas was called in to receive care for his knee problems at the Dade CI medical department, or sent to be seen by medical care givers outside the prison between November 2006 and November 2007. (Poveda's affidavit and motion indicate that Plaintiff Thomas was provided examination, diagnosis, pain management [oral medication, analgesic balm, and injections], special passes, and assistive devices; but Poveda's documents do not indicate by date when events occurred during Thomas' course of treatment). It is also noted that there is no indication from Thomas' filings that he asked to go to sick call between November 2006 and November 2007 to seek care for his knees.

Regarding x-rays and scans, Plaintiff Thomas states that Poveda took his 11/15/06 X-ray and marked it "Normal OK to File Chart," and then did not order an MRI of his knee until two years later on October 28, 2008. (Affidavit, DE#68, p.6). Thomas reiterates in his Response that in November 2006 Poveda marked the X-ray as normal, and had it filed away (DE#67, p.7). Thomas further states that, after their November 2006 meeting, Poveda "never called plaintiff for followup" (Id.), and as a result he stopped Poveda "on the street" 3 months later [about February 2007] to ask about the x-ray results, and personally told him he was in pain. Poveda allegedly said that there was nothing he could do. (Id.).

Thomas claims that about 9 months later (in November 2007), after he complained of severe pain, Poveda again examined him and acknowledged that he had a deformed knee. (DE#67, p.7).

Regarding medication, Plaintiff Thomas states that Dr. Poveda refused him pain medication on November 7, 2006, and states that he

---

[2]   The abbreviations, respectively, stand for complete blood count urinalysis, and fecal occult blood test.

"only ordered some for two weeks on November 20, 2007. (Affidavit, DE#68, p.4). As already noted above, Thomas states that 3 months after his 11/7/06 consultation with Poveda he encountered the doctor within the prison, but outside the medical department, and told him he was in pain, and Poveda dismissed his request for help. Thomas further states in his Affidavit that when he was referred about a year later to see an Orthopedist, Poveda "withheld the pain medication ordered by the Orthopedic on December 14, 2007." (DE#68, p.4). In his Response (DE#67, p.16) Thomas, citing his own Deposition, more specifically states that "Dr. Poveda withheld the anti-inflammatory pain medication, Naproxen, ordered by the Orthopedic." (See Depo., T/36-38, indicating that Thomas filed a grievance and was later given the Naproxen by another physician, Dr. Aguilar).[3]

Regarding assistive devices/appliances, as mentioned above, Thomas states that on November 7, and November 15, 2006, Dr. Poveda refused to order/provide a knee brace which he [Thomas] had requested at that time (Affidavit, DE#68, p.5, ¶9), and only a year later ordered a knee support on November 20, 2007. Plaintiff further states that an actual knee brace was not provided until November of 2008, and a cane and boots were not given to him until after the Orthopedist ordered on 12/14/09 that they be provided.

Regarding special privileges/passes, Thomas in his Affidavit states that he was refused a low-bunk pass on 11/7 and 11/15/06, and again was refused a low-bunk pass on 11/20 and 12/10/07. He complains states that it was not issued until after it was ordered by the Orthopedist on 12/14/07. (Affidavit, DE#68, pp.5-6).

### D. Law Relating to Medical Claims in the Prison Context

---

[3] Examination of the Orthopedic Consultation Report reveals that the Orthopedist's 12/14/07 medication recommendation was for an "NSAID of choice" (DE#67, p.44). Slightly more than 3 weeks before, on 11/20/07, defendant Poveda had written an Order for Thomas to receive a prescription strength NSAID [non-steroidal anti-inflammatory drug], Ibuprofen 600mg (see DE# 67, pp.38, 39). A later 2/17/09 Orthopedist's Report focused on state of plaintiff's condition as revealed by diagnostic tests and physical examination, and the possibility of surgery if the plaintiff agreed to have the procedure, but was silent regarding prescription of medication. (DE#67, pp.52-53). Chart entries on the afternoon of 2/17/09, under Poveda's signature, indicate in pertinent part that plaintiff was to receive, in addition to Tylenol #3, Naproxen "PRN as needed." (DE#67-1, p.2).

Title 42 U.S.C., Section 1983, requires an affirmative causal connection between an official's acts and an alleged constitutional deprivation. Harris v. Ostrout, 65 F.3d 912, 917 (11 Cir. 1995); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11 Cir. 1995).

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eight Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Whether an inmate's medical need requires attention as a matter of constitutional right depends upon its severity. See Estelle, supra, at 104-06. Generally, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11 Cir. 2003) (quoting Hill v. Dekalb Req'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11 Cir. 1994)).

The standard may be met where there is a showing that jail officials denied or delayed an inmate from receiving necessary medical treatment for non-medical reasons, see Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704 (11 Cir. 1985). In addition, officials' inordinate delay in providing necessary treatment, without medical explanation, may evidence deliberate indifference, Farrow v. West, 320 F.3d 1235, 1247 (11 Cir. 2003), and the standard may be met where there is intentional, unexplained delay in providing to access treatment for serious painful injuries, Brown v. Hughes, 894 F.2d 1533 (11 Cir. 1990), and cases cited therein.

Deliberate indifference can be established by evidence that necessary medical treatment has been withheld or delayed for nonmedical or unexplained reasons. Farrow, 320 F.3d at 1247 (finding jury question on issue of deliberate indifference because of unexplained fifteen-month delay in treatment). The tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay. Harris v. Coweta County, 21 F.3d 388, 393-94 (11 Cir. 1994). A plaintiff may also establish deliberate indifference with evidence of treatment

"so cursory as to amount to no treatment at all." <u>Ancata v. Prison Health Servs., Inc.</u>, 769 F.2d 700, 704 (11 Cir. 1985). If prison officials delay or deny access to medical care or intentionally interfere with treatment once prescribed, they may violate the Eighth Amendment. <u>Estelle</u>, 429 U.S. at 104.

In <u>Estelle</u>, the Supreme Court reasoned that "an inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." <u>Id.</u>, 429 U.S. at 103. Not every claim by a prisoner, asserting that he has not received adequate medical treatment, however, is sufficient to state a violation of the Eighth Amendment. <u>McElligot v. Foley</u>, 182 F.3d 1248, 1254 (11 Cir.1999). Negligence is not enough,[4] and a mere difference of opinion between an inmate and prison medical staff concerning his diagnosis and course of treatment does not rise to the level of a constitutional deprivation.[5] Thus, it is well settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. <u>Estelle</u>, <u>supra</u>; <u>Adams v. Poag</u>, 61 F.3d 1538 (11 Cir. 1995). In fact, once an inmate has received medical care, courts are hesitant to find that

---

[4] It is well settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. A showing of conscious or callous indifference is required. <u>Estelle</u>, <u>supra</u>, 429 U.S. at 104-06; <u>Daniels v. Williams</u>, 474 U.S. 327 (1986); <u>Brown v. Hughes</u>, 894 F.2d 1533, 1537-38 (11 Cir. 1990); <u>Washington v. Dugger</u>, 860 F.2d 1018, 1021 (11 Cir. 1988).

[5] Courts have long recognized that a difference of opinion between an inmate and the prison medical staff regarding medical matters, including the diagnosis or treatment which the inmate receives, cannot in itself rise to the level of a cause of action for cruel and unusual punishment, and have consistently held that the propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action. <u>Estelle</u>, <u>supra</u>, at 107 ("matter[s] of medical judgment" do not give rise to a §1983 claim). <u>See</u>: <u>Ledoux v. Davies</u>, 961 F.2d 1536 (10 Cir. 1992) (inmate's claim he was denied medication was contradicted by his own statement, and inmate's belief that he needed additional medication other than that prescribed by treating physician was insufficient to establish constitutional violation); <u>Ramos v. Lamm</u>, 639 F.2d 559, 575 (10 Cir. 1980) (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation), <u>cert.</u> <u>denied</u>, 450 U.S. 1041 (1981); <u>Smart v. Villar</u>, 547 F.2d 112, 114 (10 Cir. 1976) (same); <u>Burns v. Head Jailor of LaSalle County Jail</u>, 576 F.Supp. 618, 620 (N.D. Ill., E.D. 1984) (exercise of prison doctor's professional judgment to discontinue prescription for certain drugs not actionable under §1983).

a constitutional violation has occurred. Hamm v. DeKalb County, 774 F.2d 1567, (11 Cir.), cert. denied, 475 U.S. 1096 (1986).

Treatment violates the Eighth Amendment only if it involves "something more than a medical judgment call, an accident, or an inadvertent failure," Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5 Cir. 1980). It must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11 Cir. 1991). In order to show an objectively serious deprivation of medical care, the inmate must demonstrate: 1) an objectively serious medical need that, left unattended, poses a serious risk of harm; 2) that the response made by public officials to that need was poor enough to constitute an "unnecessary and wanton infliction of pain," and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law; and 3) an attitude of deliberate indifference, which shows that the defendants were aware of the facts from which a substantial risk of serious harm could be inferred, *and that they actually did draw that inference*. Taylor v. Adams, 221 F.3d 1254, 1258 (11 Cir. 2002). The deliberate indifference requirement is discussed further, below.

### **The Eighth Amendment**

The Eighth Amendment governs the conditions under which con-victed prisoners are confined and the treatment they receive while in prison. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)); Campbell v. Sikes, 169 F.3d 1353, 1362 (11 Cir. 1999); see also Whitley v. Albers, 475 U.S. 312, 327 (1986) (holding that "the Due Process Clause affords ... no greater protection").

In LaMarca v. Turner, 995 F.2d 1526, 1535 (11 Cir. 1993) the Court held that to prevail on an Eighth Amendment claim for damages in a civil rights suit, a plaintiff must prove three elements: 1) *an objective element*, a condition that inflicted unnecessary pain or suffering, Id., citing Rhodes v. Chapman, 452 U.S. 337, 347

(1981); 2) *a subjective element*, deliberate indifference on the part of the defendant(s) to that condition, Id., citing Wilson v. Seiter, 501 U.S. 594 (1991); and 3) causation, Id., citing Williams v. Bennett, 689 F.2d 1370, 1389-90 (11 Cir. 1982). Both the objective and subjective elements must be satisfied. LaMarca, supra, 995 F.2d at 1535, n. 17 (citing Hudson v. McMillian, ___ U.S. ___, 112 S.Ct. 995, 999-1000 (1992)).

Although the Constitution does not require comfortable prisons, it does not permit inhumane ones. Farmer, supra, 511 U.S. at 832 (quoting Rhodes, supra, 452 U.S. at 349). Still, the Eighth Amendment does not authorize judicial reconsideration of "every governmental action affecting the interests or well-being of a prisoner," Whitley, 475 U.S. at 319; instead, "'[a]fter incarceration, only the "'unnecessary and wanton infliction of pain'"... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Id. at 319 (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976) (citations omitted))). Crucial to establishing an "unnecessary and wanton infliction of pain" is some proof that officials acted with specific intent. The exact nature of the specific intent required depends on the type of claim at issue. Campbell v. Sikes, supra, 169 F.3d at 1363. This specific-intent requirement for an Eighth Amendment violation applies to claims of medical indifference. Campbell v. Sikes, supra, 169 F.3d at 1363-64.

As the Eleventh Circuit in Campbell v. Sikes observed, the Supreme Court in Wilson v. Seiter, and later Farmer v. Brennan, has "refined the inquiry" regarding satisfaction of the subjective element required for an Eighth Amendment deprivation. Campbell, supra, 169 F.3d at 1363. The Supreme Court explained in Wilson v. Seiter, that the Eighth Amendment applies only to punishments, and that prison conditions are only punishment if a mental element of punitive intent is shown, Wilson, supra, 501 U.S. at 300 ("If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify"). In Farmer v. Brennan,

11

the Court provided further explanation of the mental state that is required for deliberate indifference, Farmer, supra, 511 U.S. at 837-38 (holding that a prison official cannot be found liable under the 8th Amendment for denying an inmate humane conditions unless he knows of and disregards an excessive risk to inmate health or safety; and he must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the defendant must also draw the inference).

As the Eleventh Circuit has noted post-Farmer, proof that the defendant should have perceived the risk, but did not, is insufficient. Campbell supra, at 1364 (citing Farmer, at 838); Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11 Cir. 1996) (the official must have a subjectively "'sufficiently culpable state of mind,'" and "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not...'") (quoting Farmer, supra, 511 U.S. at 834, 838).  Liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of "an excessive risk to inmate health or safety" and disregarded that risk." Campbell, supra, at 1364 (citing Farmer, at 837).

### E. Analysis RE: Medical Claims Against Defendant Poveda

Taking the evidence of record in the light most favorable to plaintiff Thomas, it apparent he had chronic medical problems when he arrived at Dade CI, primarily affecting his right knee, but also beginning to affect his left knee, which required further evaluation and diagnosis, and which, according to Thomas, was causing him pain for which he requested but was not given medication. Defendant Poveda's own Affidavit indicates that after inmate Thomas' October 2006 transfer to Dade CI he was examined for right knee pain, and "had degenerative joint disease and chronic right knee pain due to a pre-existing right knee injury." (DE#59-3, Affidavit, ¶¶4-5). The record shows that that injury had occurred while Thomas was in state prison in 1989. Although the 11/7/06 chart entry by Poveda only briefly references pain, and the ordering of knee x-rays

(DE#67, p.35), a chart entry by Poveda dated 10/28/08 indicates that Thomas had had "chronic R knee pain since 1997 as per problem list." (Id., p.49). The same 10/28/08 chart entry, reviewing diagnosis and care provided since plaintiff's 10/06 arrival at Dade CI, stated in part: "Since 11/06 to present he has been closely followed by us here at DCI" and that "he has also been followed by orthopedist." (Id.). Apart from the 11/06 x-ray studies, however, the October 2008 chart entry does not indicate what other care may have been provided between November 2006 and November 2007. Nor does Poveda's Affidavit. Apart from Thomas being seen by Poveda on 11/7/06 [DE#67, p.35], the Radiologist's 11/15/06 X-ray Report charted at Dade CI by a Nurse on 11/27/06 [Id., p.36],[6] and the taking of lab tests on 9/26/07 [Id., p.38], unless there exist other medical chart entries for Thomas between November 2006 and November 2007 which are not of record, it would appear that essentially no care was provided him during that 12 month period. As discussed above, Thomas states in his sworn Response that: during his 11/7/06 consultation with Poveda the doctor refused a low bunk pass, pain medication, a knee brace, and an orthopedic consultation, and then never called him in for followup or prescribed any treatment (DE#67, p.7); and that he was ignored 3 months later when he confronted Poveda and told him he was in pain,

---

[6] Plaintiff incorrectly asserts that it was Dr. Poveda who marked the 11/15/06 Radiologist's report concerning his knee x-ray as "Normal," and "OK to file." Review of the Exhibit (DE#67 at p.36) reveals that it was a Nurse (ARNP) who did so on 11/27/06.

The 11/15/06 Radiology Report by Dr. Alv Sakrisson, M.D. read as follows, verbatim:

> Name: Perman Thomas 425550
> **BILATERAL KNEES, 11-15-06;** AP AND LATERAL VIEWS OF EACH KNEE WERE OBTAINED. NO PRIOR STUDY FOR COMPARISON.
>
> THERE IS MILD NARROWING OF THE MEDIAL COMPARTMENT OF BOTH KNEES SOMEWHAT MORE ADVANCED ON THE RIGHT. THERE IS MILD SPURRING AT THE MARGINS OF THE MEDIAL COMPARTMENT OF THE RIGHT KNEE. NO FRACTURE, LYTIC OR BLASTIC LESION IS SEEN.
>
> **IMPRESSION:** MILD JOINT SPACE NARROWING MEDIALLY OF BOTH KNEES.

(DE#67, p.36).

and also wanted to know his x-ray results (Id). In addition, Thomas' exhibits contain an informal grievance that was granted on 10/31/07, in which he complained that although he had put in for sick call 2 to 3 months earlier for his aching knee, and was told that he would be called out to see a doctor within 2 weeks, he had not been seen by a physician. (DE#67, p.37).

An 11/05/07 an RN's entry in Thomas' chart, marked SICK CALL, reads: "Requesting to know status of MD appt. Original scheduled 8/10/07. Will Reschedule for full eval of R knee c/o [complaint of] pain" (See DE#67, p.38).

The record as it stands, based on the plaintiff's and defendants' filings, indicates that the majority of care referenced in Poveda's Affidavit did not occur until 2008 and 2009, after he again saw Thomas in November 2007, possibly as a result of the inmate's October 2007 grievance. The record shows that Thomas was examined by Poveda on 11/20/07. Poveda prescribed Ibuprofen 600mg BID PRN [prescription strength Ibuprofen, 2x per day, as needed], a knee brace, and noted that an Orthopedic consult might be needed. (DE#67, p.38). The 11/20/07 Ibuprofen prescription was only for 2 weeks (see Physician's Order, DE#67, p.39; Plaintiff's Affidavit, ¶8). After his 11/20/07 meeting with Poveda, Thomas filed a Medical Inmate Request to Dr. Poveda, stating he had been told he could see an orthopedist after first trying the pain medication and brace. Therein Thomas complained that he was still in pain, that he needed a low bunk pass because climbing up and down from the upper bunk was pounding his knee, and that he was requesting the orthopedic consult. On 11/27/07 Poveda responded, instructing Thomas to sign up for sick call. (DE#67, p.40). On 12/10/07 Poveda put in motion the process for Thomas to have an Orthopedic consult. (See Chart entries 12/10 to 12/13/07, at DE#67, pp.41-42). On 12/19/07, Poveda ordered a cane for intermittent use, if necessary; issuance of boots; and follow-up in 4 moths. (Id. pp.42-43). A 12/14/07 Consultant's Report recommended: "NSAID of choice," "limit walking and standing; a "cane intermittently, if needed," a "low bunk bed," "issued boots," and "f/u x 3-4 mo." (DE#67, p.44). On 12/19/07, Dr.

14

Poveda issued a 6 month low/bottom bunk pass, and a restricted activity pass (DE#67, p.45), and two weeks later, on 1/3/08, Dr. Aguilar issued a 6 month no prolonged standing and no prolonged walking passes. (Id.). Ten months later, on 10/27/08, Poveda requested another Orthopedic consult, noting that Thomas had unrelieved knee pain, and that surgical treatment might be necessary, (Id., p.47), and in conjunction with that request, Poveda signed a 10/28/08 Request that an MRI be performed ASAP (Id., p.48).[7] Poveda's notes in Thomas' Chronological Record for 10/28/08 (under "Will Do") indicate that Thomas was to receive a "hard" knee brace, passes [for no prolonged standing, no push and pull, and no lifting, no work until assessed by orthopedist], a "new x-ray," Motrin 600mg (BID/PRN, 2x per day, as needed), and analgesic balm. The 11/21/08 MRI Report for Thomas' right knee was reviewed by Poveda on 12/1/08. The 11/21/08 MRI Report indicated fluid in the knee, changes in the knee cap, tears in the meniscus or cartilage of the knee, tendon inflammation or injury, severe abnormalities in the femur and tibia attributed to "chronic a process likely to reflect previous trauma and/or inflammatory changed, and "superimposed degenerative osteoarthritic changes." (DE#67, pp.50-51). Three months later, on 2/17/09, Orhtopedist Dr. Ponce de Leon saw Thomas, and upon physical examination found that Thomas "walks with a limp," and that he had "tenderness" and "severe degenerative changes" at the right knee medial compartment, that he had "complete narrowing" of the medial articular space," and that due to advanced osteoarthritis arthroscopic surgery was not indicated. The Orthopedist wrote that "there is no other possibility" for "a definitive treatment," except a total knee replacement "if the patient agrees." The Orthopedist used a needle to aspirate the joint, but obtained no fluid. (DE#67, pp.52-53). On 2/17/09 Poveda restated the orthopedist's findings as entries in Thomas' Chronological Record of Health Care

---

[7]  The defendant Poveda in his 5/5/09 Affidavit states "the orthopedist has not recommended the Plaintiff undergo surgery to his right knee." (DE#59-3, p.4, ¶13). Poveda's own chart entries dated 2/17/09, however, state that "inmate was told (by orthopedist) that...arthroscopic surgery is not indicated due to his advanced arthritis -- next step to do is a total knee replacement...," and that "Orthopedist said If the Patient Agree, a Total Knee Replacement can be done as definitive treatment for his condition." (DE#67-1, p.2).

(DE#67-1, pp.1-2), and indicated that the care plan that would be provided included a brace (already placed), Motrin 600mg (2x per day), and Tylenol #3 (3x per day, with monitoring for side effects) (Id., p.3). Poveda's notes indicate that Thomas requested a wheel-chair (DE#67-1, p.1) but when Poveda asked the Orthopedist he said that Thomas did not need one, but that he should use a cane, and should walk as much as possible, as tolerated. (Id., at p.4).

As a threshold matter, absent evidence to the contrary, it is presumed for purposes of the defendant's motion for summary judgment that plaintiff Thomas' underlying medical problem qualified as serious medical needs. It had been diagnosed by medical personnel; a November 2006 x-ray, although marked "Normal" by a nurse, showed orthopedic changes which were more pronounced in the right knee, Thomas complained of pain, and upon progressive deterioration the limp which he developed would have made his condition apparent even to a lay person. (See Farrow supra, 320 F.3d at 1243, quoting Hill, supra, 40 F.3d at 1187). The plaintiff and defendant both have stated that plaintiff had degenerative joint disease dating back to 17 year old injury. The plaintiff has sworn that when he was transferred to Dade CI in October 2006 he was suffering pain, and that he continued to suffer from it while at Dade CI under Poveda's care from 2006 to 2008, and into 2009. It appears that, as such, the pain itself, experienced over a long period, would, apart from the underlying disease process, qualify as a serious medical need. See McElligott v. Foley, 182 F.3d 1248, 1257 (11 Cir.1999) (finding that an inmate's complaints of abdominal pain over a course of 5½ months should have signaled a serious medical need); see Farrow, supra, 320 F.3d at 1247 (inmate complained about dental pain for about 15 months); Brown v. Hughes, supra, 894 F.2d at 1538 (painful broken foot can be serious medical need, and an official's deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim); Aldridge v. Montgomery, 753 F.2d 970, 972-73 (11 Cir. 1985) (2½ hour delay in treatment for a bleeding cut under the eye held actionable); Hughes v. Noble, 295 F.2d 495 (5 Cir. 1961) (13 hour delay for broken and dislocated cervical vertebrae).

Thomas' claim that Dr. Poveda should have provided a knee brace, a low bunk pass, an MRI, and an orthopedic consultation, upon his November 2006 meeting with him, rather than simply ordering an x-ray, appears to amount to a difference of opinion between the inmate/patient and prison medical staff member, which, without more, does not rise to the level of a constitutional violation. See Estelle, supra, 429 U.S. at 107. It is clear from the complaint and plaintiff Thoms' sworn response that he claims those things should have been ordered at that time because he, as the patient, believed it was appropriate to do so. The mere fact that a defendant physician took a more conservative approach, and sought to obtain x-rays before ordering further tests or consultations, and before granting a low bunk pass or knee brace, does not render him deliberately indifferent. Here, there is no evidence of record to show that defendant Dr. Poveda, at the time in question (November 2006) was aware of facts indicating that if he did not then order the things that plaintiff Thomas claims he demanded, it would put Thomas at a serious risk of harm, and that, having drawn that conclusion from facts known to him, he [Poveda] nonetheless failed to act. Accordingly, it does not appear that Dr. Poveda can be said to have been deliberately indifferent to plaintiff's serious medical needs for not ordering a knee brace, a low bunk pass, and an orthopedic consult on November 7, 2006 when he met with Thomas, and Thomas requested them. The record indicates that Thomas had progressive degenerative joint disease. In November 2006 his x-ray showed mild joint space narrowing (DE#67, p.36). In December 2007 the Orthopedist found moderate DJD or degenerative joint disease (Id., p.44); and in February 2009 the Orthopedist found severe osteoarthritis in the right knee, and mild disease in the left one (Id., p.53). It also does not appear that defendant Poveda's taking of a conservative step-wise approach amounted to deliberate indifference, when he relied upon his own further examinations, further testing, and consultations and recommendations by the Orthopedist in December 2007, and February 2009, to reach conclusions about when the taking of an MRI was appropriate, and when certain assistive devices and special passes were needed. The record does not show that from facts known to him Poveda drew conclusions that

17

Thomas would suffer harm if he did not, for example order an MRI, a walking cane, a hard knee brace, and additional passes (no work, no push-pull, no lifting) sooner than he did. As such he has, in that respect, not been shown to have been deliberately indifferent. See Farmer, supra, 511 U.S. at 838; Taylor, supra, 221 F.3d at 1258; Campbell, supra, 169 F.3d at 1364; and Cottrell, supra, 85 F.3d at 1491.

The sworn claim/allegations that plaintiff Thomas complained to Poveda in November 2006 that he was in pain, and reiterated his complaints of pain to Poveda personally in about February 2007 and via the grievance process later in 2007, and was apparently denied pain medication is, however, more problematic. As noted supra, pain which is suffered over an extended period of time, caused by an underlying medical condition, is itself considered under Eleventh Circuit law to be a serious medical need, requiring attention. Taking Thomas' allegations as true, and construing the evidence of record in the light most favorable to him as the plaintiff/non-movant, it appears that defendant Poveda did not respond to indications that Thomas was in pain, and needed medication to provide relief. Thomas' sworn statements indicate that he requested and was denied pain medication by Poveda on November 7, 2006, and from the record that is before the Court it appears that pain medication in the form of Ibuprofen was first ordered by Poveda a year later on 11/20/07, and then apparently for only 2 weeks. (DE#67, pp.38-39). Although Poveda states in his Affidavit that Thomas was provided Ibuprofen, Motrin, Naproxen,[8] analgesic balm, and cortizone injections (DE#59-3, ¶8), it is apparent that most all of those prescriptions came only in late October 2008 (see DE#67, pp.47-49), and in Mid-February 2009 after Plaintiff's December 2008 Orthopedic consultation. (See DE#67-1, pp.3-4). In sum, this case does not appear to involve a mere difference of opinion between an inmate/patient and prison medical staff regarding whether pain

---

[8] Plaintiff contends that Poveda totally ignored the Orthopedist's recommendation that he be prescribed Naproxen; however, as noted supra, at footnote 3, and related text, an Order by Poveda for Naproxen appears in the medical chart on 2/17/09, the same day that plaintiff was seen by Orthopedist Ponce de Leon.

medication was appropriate. See Harris v. Thigpen, 941 F.2d 1495, 1505 (11 Cir. 1991). *Cf*. Adams v. Poag, 61 F.3d 1537 (11 Cir.1995). Instead, as to the claim of Poveda's alleged failure to provide pain management, there are genuine issues of material fact, the existence of which precludes summary judgment. See Celotex Corp. V. Catrett, supra; and it is apparent that on this claim the defendant is not entitled to qualified immunity.[9]

### III Conclusion

It is therefore recommended that: 1) defendant Poveda's motion for summary judgment (DE#59) be granted, in part, with respect to claims of delays in provision of testing, passes, assistive devices, and referral to a specialist, and denied, in part, with respect to the claim that he denied plaintiff Poveda medication for relief of pain; and 2) the case remain pending as to the defendant Poveda solely on the claim that he failed to respond, for at least a year, to plaintiff's need for pain relief.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: November 17th, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

---

[9] In this case, preexisting case law in this circuit established that prolonged pain qualifies as a serious need. Here, the plaintiff claims that he personally made Poveda aware that he was in pain and needed some medical relief, and that Poveda completely ignored his complaint of pain, and request for medication, at least from late 2006 until November 2007. Construing the evidence in the light most favorable to the plaintiff, Poveda's general statement at ¶8 of his Affidavit regarding provision of pain medication, analgesic balm, and Cortizone shots, does not suffice to demonstrate that he did not ignore plaintiff's need for pain relief, at least until November 2007, when contrasted with plaintiff's Affidavit and his Response with medical exhibits, indicating that pain relief was not prescribed until 11/20/07.

19

cc:   Permon Thomas, <u>Pro Se</u>
      DC# 425550
      Dade Correctional Institution
      19000 S.W. 377th Street
      Florida City, FL 33034-6499


      James P. O'Hara, Esquire
      McINTOSH, SAWRAN, PELTZ & CARTAYA, P.A.
      1776 East Sunrise Boulevard
      P.O. Box 7990
      Fort Lauderdale, FL 33338-7990